TITLE GUARANTEE AND TRUST COMPANY, Respondent, *v.* 457 SCHENECTADY AVENUE, INC., and Others, Defendants.*

In the Matter of the Application of NEW YORK WATER SERVICE CORPORATION, Appellant, for Leave to Shut Off the Supply of Water at No. 457 Schenectady Avenue, Brooklyn, N. Y., for the Non-payment of Its Water Bills; or, in the Alternative, for an Order Authorizing and Directing EDWARD WARD MCMAHON, Respondent, as Receiver of the Rents, Issues and Profits Thereof, to Pay to Petitioner Its Water Bills of $677, with Interest and/or Penalty.

Second Department, May 20, 1932.

*Thomas W. Maires* [*Henry S. Ferriss* with him on the brief], for the appellant.

*Murray Lehman* [*Harold L. Turk* with him on the brief], for the receiver, respondent.

*John C. O'Malley* [*Harry L. Thompson* with him on the brief], for the plaintiff, respondent.

* Revg. 142 Misc. 755.

HAGARTY, J. The Flatbush Water Works Company, chartered on June 14, 1881, under chapter 737 of the Laws of 1873, to supply water to that part of Brooklyn known as " Flatbush," was merged into the petitioner, appellant, New York Water Service Corporation, on the 30th day of December, 1926, which latter corporation became thereby vested with all the rights, privileges and franchises of the former.

Defendant 457 Schenectady Avenue, Inc., became the owner of the property here involved, located in the appellant's territory, on the 30th day of January, 1931. This property is a six-story apartment house accommodating upwards of eighty-five families. On the 25th day of February, 1931, the defendant owner made application to the appellant wherein it agreed to pay to it, for all water supplied by meter, a designated rate, and to " continue to pay for all water furnished " until it notified the appellant in writing of any change of ownership.

In the action pending, in which this application was made, plaintiff, respondent, Title Guarantee and Trust Company, is foreclosing a mortgage made to it on the 18th of May, 1928, by defendant Barjud Realty Corporation, a prior owner. In a prior action to foreclose a second mortgage a receiver of the rents, with the usual powers, was appointed. This receivership was extended for the benefit of the plaintiff in this action.

From the 2d of March, 1931, to the 18th of December, 1931, the appellant furnished to the mortgaged premises water for which there is now due the sum of $677. This water was consumed in part by the defendant owner and for a period of three days by the receiver. The charges did not become a lien upon the real estate.

Rules and regulations were established by the appellant for the conduct of its business, the operation of its plant, and the supply of its water to its consumers. These rules and regulations were also filed on the 29th of August, 1931, together with a schedule of water rates and charges, with the Public Service Commission in this district, as recently required by section 89-c, subdivision 10, of the Public Service Law, enacted by chapter 715 of the Laws of 1931, and provided, among other things, that service may be discontinued for non-payment thereof.

The question presented upon this appeal is whether or not, under the circumstances and conditions as I have outlined them, the appellant has the right to shut off the supply of water to this apartment house for failure, upon demand, to pay the charges which accumulated prior to the appointment of the receiver. In other words, does the appointment of a receiver, at the behest of a mort-

gagee in an action to foreclose a mortgage, bring about such a change as to preclude the water company from resorting to this remedy?

The appellant is a public service corporation subject to the Public Service Commission. It is not at liberty arbitrarily to fix its rates or to select its customers. It must operate within its territory and supply water to all who demand it, provided the ones demanding are not in arrears for water theretofore furnished.

The right of a water company to shut off the water under its rules and regulations, in default of payment, has long been recognized. (*McEntee* v. *Kingston Water Co.*, 165 N. Y. 27; *Silkman* v. *Water Commissioners*, 152 id. 327; *Brass* v. *Rathbone*, 153 id. 435.) The receiver, respondent, does not deny the right of the appellant, in a proper case, to turn off the supply of water. What the respondent does contend here is that a new entity arises upon the appointment of a receiver, and that the right to shut off is unreasonable when applied to a receiver in possession for non-payment of claims against the fee owner. The cases are uniform in holding that the company may not refuse to furnish water to a new owner because of an unpaid water bill by his predecessor. The question is whether or not, under the law, a change of ownership has been brought about by the foreclosure action and the appointment of a receiver.

A mortgage is but a security for debt. The mortgagor remains the owner. (*Kortright* v. *Cady*, 21 N. Y. 343, 347; *Power* v. *Lester*, 23 id. 527, 531.) " In an action to foreclose a mortgage, the interests of parties become barred and foreclosed, not upon the entry of the judgment, but upon the sale and conveyance of the land." (Civ. Prac. Act, § 1085; *Nutt* v. *Cuming*, 155 N. Y. 309.) The legal right to the rents, as well as to possession, continues in the mortgagor until foreclosure and sale. (*Hollenbeck* v. *Donnell*, 94 N. Y. 342, 347.) The rents, of course, may be pledged and a receiver appointed. When not pledged, a receiver may be appointed upon proof of insufficiency of the security. Even when the mortgage provides for an assignment of rents, such assignment is only for further security and does not transfer the legal title. (*Sullivan* v. *Rosson*, 223 N. Y. 217, 224.)

If we eliminate the element of the receivership, there is no doubt about the appellant's right to shut off the water. In other words, the mere foreclosure of the mortgage in no wise affects its rights. The question now remaining is whether or not the appointment of the receiver of rents brought a change in the title and interest of the parties so affecting appellant that it lost its right to shut off the water. There is a vast difference between a receivership to manage the property in a foreclosure action and a receivership for the benefit of creditors. In the first class, the purpose is to preserve the prop-

erty temporarily for the benefit of the parties before the court, primarily the mortgagee. The mortgagee, having sought equity, and the rents having been pledged as further security, or the court having deemed the security actually pledged to be insufficient, takes possession through a receiver of the rents, pending the outcome of the action. The net amount, in case of a deficiency, is to be applied in satisfaction of the deficiency judgment, otherwise to be paid to the mortgagor or the owner of the fee. This theory is supported by such cases as *Burtaine* v. *Barr* (194 App. Div. 906), where this court held that the appointment of a temporary receiver does not transfer title to the property, and *Keeney* v. *Home Insurance Company* (71 N. Y. 396), from the opinion in which I quote: "A receiver *pendente lite* is a person appointed to take charge of the fund or property to which the receivership extends while the case remains undecided. The title to the property is not changed by the appointment. The receiver acquires no title, but only the right of possession as the officer of the court. The title remains in those in whom it was vested when the appointment was made. The object of the appointment is to secure the property pending the litigation, so that it may be appropriated in accordance with the rights of the parties, as they may be determined by the judgment in the action. [Citing cases.] The appointment of the plaintiff as receiver, therefore, wrought no change in the title of the property." This distinction was recognized in the opinion of Mr. Justice LAUGHLIN in *Matter of French* (181 App. Div. 719, 731; affd., without opinion, 224 N. Y. 555): "There is a marked distinction between a temporary receiver, who is a mere custodian without title and does not represent the creditors (*Decker* v. *Gardner*, 124 N. Y. 334; *Herring* v. *N. Y., L. E. & W. R. R. Co.*, 105 id. 340; *Franklin Trust Co.* v. *N. A. R. R. Co.*, 11 App. Div. 249; *Mercantile Trust Co.* v. *Kings County El. R. Co.*, 40 id. 141), and a permanent receiver, in whom the title to the corporate property is completely vested and who represents all the creditors and stockholders." A receiver's possession is commonly recognized as the possession of the court, but that is "in theory of law" only. (*Matter of Lewis & Fowler Mfg. Co.*, 89 Hun, 208.) In that case Mr. Justice DYKMAN said of this theory: "That doctrine is a fiction of law which was adopted for the advancement of right and justice, and resort is made to it for no other purpose." To the same effect is *United States Trust Co.* v. *N. Y., W. S. & B. R. Co.* (101 N. Y. 478); *Decker* v. *Gardner* (124 id. 334) and *Stokes* v. *Hoffman House* (167 id. 554).

There is a distinction between that class of receivers and statutory court officers, whose appointments bring about a change of title and

interest. A case which illustrates the rights of a public utility company with respect to court officers where there has been a change of ownership is *Cox* v. *Malden & Melrose Gas Light Co.* (199 Mass. 324.) There the defendant gas company refused to supply gas to the trustees for the benefit of creditors for the reason that the corporation was indebted to the company for gas previously supplied. The court sustained the plaintiffs in their claim because, quoting from the opinion, " The assignment worked a change of ownership, not only in the legal title but in the interests represented by it. From the time of the assignment the property was held primarily for the benefit of the creditors, and it was ultimately to be disposed of for the payment of their debts," citing *Turner* v. *Revere Water Co.* (171 Mass. 329).

In the State of New York permanent or statutory receivers " are vested with all the real and personal estate of the corporation, and are made trustees of such estate for the benefit of the creditors and stockholders, and possess generally all the powers and authority conferred by law upon the assignees of insolvent debtors." (*Decker* v. *Gardner*, 124 N. Y. 334, 337; Gen. Corp. Law, § 168, and Civ. Prac. Act, § 809.)

The fact that water charges are not made liens is of no consequence in determining the question before us. Water charges are made liens when furnished by the city of New York (Greater New York Charter, § 473, as amd. by Laws of 1916, chap. 602), or by a town (Town Law, § 293), or by a village (Village Law, § 229); but, in so far as I am able to find, no lien whatsoever is or ever has been given to a private water company in this State.

The whole question here involves adjustments of equities as between the mortgagee and this appellant water company. The equities, in my opinion, are all with the water company.

The order should be reversed on the law, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

LAZANSKY, P. J., YOUNG, KAPPER and CARSWELL, JJ., concur.

Order denying motion for leave to shut off water supply reversed on the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.